Good morning, your honors. Just one minute, Ms. Wolfe, while we get our little sheets here, and then we can give you our full attention. There you go. Thank you. This was a one witness I.D. case. Other than the testimony of a police officer stating what he saw, there was no physical possession and there were no prints. I just want to, before I go on, point out two references in the government's brief that I think might be misleading on that account. The government says that there were two civilian witnesses at the scene. They were not at the scene where this officer said he saw the passing of a gun. They were after there had been a chase, and they testified. One's the UBS driver, right? Yes, the UBS driver, and I think someone who worked at a restaurant. So they had seen a gun being tossed, but that was not on the scene of where the officer said he saw my client. The other point the government makes is that they say that the two men, my client and another gentleman, met up on the street, and the testimony was that they were walking together. So there's no implication that they had met up in order to engage in some sort of transaction. In challenging Officer Crane's credibility. I mean, what's the value of the distinction you are making? To my mind, having prosecuted a few people, it's almost worse if they're walking together rather than meeting up. Yeah, I understand. It's just a matter of one's perspective, and I just wanted the record to be clear that they were walking together as opposed to meeting up, and one could see it in different lights. In challenging Officer Crane's credibility, defense counsel argued that Crane would have you believe that, in the view of two uniformed police officers in broad daylight without any obstructions, and from three to four car lengths away, Mr. Knox chose to pass a gun from himself to another person. This argument was part of a larger credibility argument that included bias, arguing that the officer was motivated by the fact that he'd seen and stopped Mr. Knox before, and there was some discrepancy between his testimony, the officer's testimony, and his partner's testimony, and discrepancy between the officer's testimony regarding the time of arrest and the testimony of a defense witness. It was couched strictly in terms of credibility. It did not invite a response that contradicted the court's critical limiting instruction and raised an improper consideration. The government's response, in fact, was a non sequitur, and I submit it was an excuse to tell the jury at the very end of the case where there was no possibility of a defense response that Mr. Knox is a convicted felon. The defense argued that you couldn't believe Crane. That fact had been stipulated to, had it not? Yes, it had. It had been stipulated to. It was an instruction that it was only usable as an element of the offense and nothing more. So when it was argued in summation that the reason why Mr. Knox passed a gun to his companion, because he was a convicted felon and therefore couldn't have a gun, it was being used to explain his conduct and prove his possession. And the attack on Officer Crane's credibility. Why wasn't this an appropriate response to defense counsel's attack on Officer Crane's credibility? Because it was just that. It was credibility and arguing that using the conviction to prove. If the defense summation is what Officer Crane doesn't make sense, why can't the government come back and respond it doesn't make sense for this reason? Well, in this case, it was speculative, but beyond that, it was a non sequitur. When the defense counsel is arguing it doesn't make sense for him to pass a gun in full view of two police officers, and then the government responds and says he's a convicted felon, therefore he passed the gun. He passed the gun because he's a convicted felon and he wasn't supposed to be in possession of a gun. But the critical fact is that the critical argument is that it was in the view of police officers. So his prior conviction would give him even greater cause not to do anything to raise the suspicion of the police officers. So it wasn't. I suspect when he did it, let's assume that he did do it, that he didn't know that the officers were watching him. I mean, just because there are cop cars out there and you're coming up to where officers might be paying more attention to you and you make an effort to get rid of contraband, as to him anyway, contraband, I mean, why is that a non sequitur? First of all, the government was very clear in bringing out on the direct examination that there were no obstructions and that the police officer saw Knox. So the reasonable inference is that Knox saw the police officer seeing him. He doesn't have to see them seeing him, but he has to see them... Yeah, in fact, he's hoping they're not seeing him while he's passing the gun off, but I'm coming up to a danger zone and if these folks catch me with this, I'm in really big trouble. So here, friend, take this. But you would, I mean, that's a line of speculation that although the police officer saw him, he didn't see them and he didn't see them seeing him, but he would have more of an incentive not to move the gun or expose it in any way if the government's theory held that the reason why he wouldn't want to possess a gun is because he's a convicted felon, plus the fact that possession of a weapon is a violation of New York state law. So it defies logic to argue that he doesn't want to possess a gun, but this guy is willing to commit a crime by possessing a gun. And especially, I mean, these are very sensitive cases, the felon in possession cases, because the defendant faces a jury as a convicted felon. It's something that comes up right up front and it really, really challenges the jury's ability to accept and apply the presumption of innocence. Which is why the district court gives special instructions focused exactly on that, in a way that they can only consider it for one purpose and one purpose only, right? Absolutely. And that was done in this case. And that was done after the government in rebuttal told them that they should use the conviction as proof of possession because he passed it, therefore he possessed it. And usually, I submit that when there's a question of opening the door, at least during cross-examination and the government claims the defense has opened the door, it's brought to the court's attention. The government will ask for a sidebar and say, look, the door's open. I can argue the conviction for another purpose. And that wasn't done here. I'm sorry, Your Honor, I caught you off. No, no, that's all right. I'm just pointing out that you've reserved two minutes for rebuttal and your red light's been on for a while, so. Okay. Well, Your Honor. That's it, right? That is. But the reasonable ‑‑ I just want to add that the abiding belief instruction exacerbated the problem with the felony conviction. Thank you. Thank you. You can reiterate that on rebuttal. Mr. Nicholas, good morning. Good morning. May it please the Court. My name is Max Nicholas. I represent the United States on this appeal. I also represented the United States at trial. If it's all right with the Court, I'd just like to first respond to one of the points made by appellate counsel about the rebuttal argument that the government made in this case. The counsel made a reference to the rebuttal somehow referencing the prior conviction in terms of helping to prove possession of the gun at trial. That's not what happened. The mention in the rebuttal of the defendant's, Mr. Knox's, prior conviction went to the motivation for passing off the gun, not for the possession. The passing off of the gun happens after the crime in this case occurred, which is the possession. The passing off of the gun to the officer is the fact to which the prior conviction helps explain, and that question was effectively raised very directly in the defense summation of the case when they said it does not make sense that Knox would choose to pass a gun to a male next to him. His choice in the matter, his decision of what to do, was raised by defense counsel, and that's why the point was made pretty briefly in rebuttal. And in addition, it was for the same reason, essentially. It was not, I submit it, a non sequitur. It was an effort to respond directly to a point made by the defense. Those are the points I wanted to make as to the colloquy between the court and defense counsel. Thank you. If there are other questions on any of the issues raised in the briefing, I'm happy to answer them. If there are no further questions. Do you want to address the jury charge just briefly on reasonable doubt, which is an argument that got touched on at the very end and will be, I expect, touched on a bit more in rebuttal? Yes, Your Honor. As to the jury charge, the jury charge fell well within charges that are commonly given in this district and did sufficiently convey the meaning of reasonable doubt. In their brief, defense counsel takes issue with the phrase abiding belief. The brief, I think, inadvertently makes it, may give the impression that there was somehow a balance where an abiding belief would need to be found of guilt or of not guilt. That wasn't the gist of the charge at all. It was an abiding belief of guilt. You need an abiding belief in order to find guilt. And then Judge Nathan said if you do not have such an abiding belief, you cannot find defendant guilty. That was entirely proper. Almost this precise charge has been upheld several times by this court in recent summary orders. And in the case, in the Bright case from 1975, the court in discussing, I think, a jury instruction or what's needed for a conviction equates the certainty needed for a conviction with the concept of an abiding belief. But I would add on this point that Judge Nathan did not simply say you need an abiding belief for guilt and I'll leave it at that. Good luck in your deliberation. She expounded on that quite a bit. And a lot of what she expounded on, in fact, included a lot of Judge Sand's model instructions. So that's my response to that. If Your Honors have any further questions, happy to answer them. Otherwise, we would respectfully ask the court to affirm the conviction. Oh, I do have one question, sorry. Yes, Your Honor. Just to confirm that the government is in agreement that it needs to be remanded for resentencing with respect to the sentence imposed on the supervised release violation. Yes, Your Honor. Strictly with respect to the sentence on the supervised release term, we can see that that should be remanded for a resentencing of that term. Thank you, Your Honors. Thank you, Mr. Nicholas. Ms. Wolfe. Thank you, Your Honor. I'm fully mindful of the fact that the court has accepted the abiding belief language before. And what I ask this court to do in this case is to recognize that it may not always be fair and right in every case. So what do we say to the district courts to whom we have already said that's okay? What do we say? Why is this a carve-out and how do we describe it? Because it is way too easy for a jury to have an abiding belief in guilt when they know that the defendant has been previously convicted of a felony. The proper instruction is that not to focus on a subjective belief, but to focus on the government's proof of guilt beyond a reasonable doubt. And I just— And not tell the jury what beyond a reasonable doubt means or try to give them some guidance so that they know what beyond a reasonable doubt is as opposed to by a preponderance as opposed to by clear and convincing evidence. I said that there was a, I think, 2,000 decision by this court saying that any attempt to tinker with the typical charge tends to dilute it. Are you saying that the proper language wasn't in the charge at all or are you saying the abiding belief language somehow renders the charge misleading and unlawful? What it does is that it equates a subjective standard with proof beyond a reasonable doubt. And in this— The phrase is immediately followed by such a belief as a prudent person would be willing to act upon in the usual language. And right before that, again, it's a discussion of what a reasonable person thinks. So I'm not sure I understand the point that you're making, that this somehow injects subjectiveness into the process. The instruction establishes state to standard, which is do you have an abiding belief or do you lack an abiding belief? And then, yes, Your Honor, it does go on to talk, to use the do not hesitate to act language. And the problem with that is that there's a—it substitutes willing to act for not hesitate to act, and that compounds the problem. Thank you. Thank you. Thank you both. We'll reserve decision in this case.